IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GINA JORDAN<br>1042 Old Bethlehem Road<br>Perkasie, PA 18944 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff,<br>v. | : <br> : <br> : <br> : | No. 19-13225 |
| SUN COMMUNITIES, INC.<br>27777 Franklin Road, Suite 200<br>Southfield, MI 48034 | : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : <br> : | |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**I. INTRODUCTION**

1.      This action has been initiated by Gina Jordan (hereinafter referred to as "Plaintiff," unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. 201, *et. seq*.) and applicable state law(s). Plaintiff asserts herein that she was not paid wages or overtime compensation in accordance with applicable state and federal laws. As a direct consequence of Defendant's actions, Plaintiff seeks damages as set forth herein.

**II. JURISDICTION AND VENUE**

2.      This Court, in accordance with 28 U.S.C. 1331, has jurisdiction over Plaintiff's claims because they arise under a federal law - the FLSA.  There is supplemental jurisdiction over Plaintiff's state-law claims herein because they arise out of the same common nucleus of operative facts as Plaintiff's federal claim(s) set forth in this lawsuit. There would additionally be diversity jurisdiction within this Court under 28 U.S.C. § 1332, as the Parties are residents and citizens of different states.  Moreover, Plaintiff would be seeking in excess of $75,000.00

through trial with unpaid wages, liquidated damages, attorney's fees, and other entitlements (exclusive of costs and interest).

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### III. <u>PARTIES</u>

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Sun Communities Inc. (hereinafter "Defendant") is a fully-integrated real estate investment company, which acquires, operates, and develops manufactured home and RV communities.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

### IV. <u>FACTUAL BACKGROUND</u>

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. In total, Plaintiff was employed with Defendant for approximately 7 years, from in or about May of 2011 through in or about December of 2018.

11. Defendant, a public company, is an investor, operator, manager, and developer of manufactured housing and recreational vehicle ("RV") communities. Defendant publicly represents that it operates in 31 states throughout the United States and Ontario, Canada. And it further represents operating over 370 communities in more than 250 cities.

12. Plaintiff physically worked at an "all age RV resort," affiliated with Cape May KOA, based at 669 Route 9, Cape May, NJ 08204. This particular community consisted of beach areas, a private lake, sports activities, tent sites, RV sites, cabins, eateries and other accommodations.

13. Plaintiff was referred to interchangeably verbally and in employment documentation by Defendant as a Supervisor, Manager or Guest Services Coordinator. Whichever title suited Defendant best for representations to the public at varying times was used to describe Plaintiff's role(s).

14. However, Plaintiff was required to live on premises. And functionally, the expectation was Plaintiff would and did in fact handle anything guest related, which included but was not limited to, leasing, showings, questions, problems, directions, and many other tasks associated with guests staying at the facilities or grounds.

15. The highest-level manager at the location wherein Plaintiff was employed was one Todd Randle ("Randle"). Randle was identified on-line and publicly as Defendant's "Community Manager."

16. Plaintiff was at every stage of her employment a non-exempt employee (as to overtime entitlement) under state and federal law(s), and Defendant characterized, treated, and paid Plaintiff as a non-exempt employee.

17. Through her employment, Plaintiff was only paid on an hourly basis (typically between $14 - $15 per hour depending upon time of employment). Defendant's pay stubs and itemizations specifically identified Plaintiff as an hourly employee, and her pay fluctuated with hours worked throughout her tenure.

18. Although Plaintiff may have at times been referred to as a supervisor or manager for outward presentation, she did not perform any typical management duties that could ever qualify her for the FLSA "Executive Exemption." Moreover, this exemption is only applicable ***to salaried employees*** and those who spend more than 50% of their time performing customary management duties along with supervising other employees. *See* 29 C.F.R. Part 541; *see also* 29 U.S.C. 213.

19. And as stated *supra*, Defendant never provided Plaintiff with any job description, documentation, or other information that purported to claim any overtime exemption(s). Any such assertion would be improper, implausible, and a malicious violation of state and federal wage law(s).

20. Plaintiff was typically ***scheduled for*** 8.5-hour shifts by Defendant's on-site management. Attached hereto as "Exhibit A" is an illustration of a schedule that would be given to Plaintiff identifying 40-hour workweeks for 1-month timeframes. The shifts scheduled reflected general business hours.

21. Plaintiff's regular payroll consisted of her being paid for approximately 40 hours or right around 40 hours per week. But Plaintiff ***was not actually paid for all time worked, or for***

4

*all overtime.* In particular, the wage and overtime violations of Defendant included but were not limited to:

> (1) Plaintiff had automatic breaks deducted from her daily work when in fact Plaintiff often had to work through breaks (shorting Plaintiff at least 30 minutes per day);
>
> (2) Even in weeks when Plaintiff was scheduled for 5 days per week (for which she was paid), Plaintiff would actually work up to 7 days per week (and not get paid for the following matters). She had a two-way radio and was consistently called for *any issues* before and after work hours, *being on call 24/7*. Staff, security or others would also continually call or knock on Plaintiff's residence for work-related issues before or after her scheduled shifts. Solely by way of examples, attached hereto as "Exhibit B" are 2 reports in back-to-back days for issues Plaintiff handled on day 1 at 12:30 AM and day 2 at 11:40 PM (outside of her scheduled hours); and
>
> (3) Plaintiff was continually unable to properly punch in or out to be paid for additional hours even when working, often due to having to close the office while not having been scheduled for same.

22.  In sum, Plaintiff was being paid for slightly under, approximately, or slightly over 40 hours per week in varying pay periods. But Plaintiff was not paid for improper auto-deductions, on-call work, and additional time worked, as she was actually averaging 60 hours per week of work. This took place primarily towards the end of Plaintiff's period of employment under Randle, who was overseeing her at the time.

23.  As a result of the foregoing, Plaintiff is owed in excess of $20,000.00, inclusive of liquidated damages. She is also entitled to legal fees and other damages for the failure to

properly compensate her for an extended period of time and for corporate management's refusal to remedy the problem despite her complaints to Defendant's corporate office.[1]

### Count I
### Violations of the Fair Labor Standards Act ("FLSA")
### (Failure to Pay Minimum Wages and Overtime)

24.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

25.     Plaintiff was not properly paid for all minimum wages and owed overtime as explained *supra*. And such actions constitute indefensible violations of the Fair Labor Standards Act ("FLSA").

### COUNT II
### Violations of New Jersey Wage and Hour Law ("NJ WHL")
### (Failure to Pay Minimum Wages and Overtime)
### -Against Both Defendants-

26.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

27.     Plaintiff was not properly paid for all minimum wages and owed overtime as explained *supra*. And such actions constitute indefensible violations of the NJ WHL.

---

[1] *See e.g*. *Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

### Count III
### Violations of the New Jersey Wage Payment Law
**(Failure to Wages Owed)**

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

29. Defendants did not pay Plaintiff her full wage rate for hours worked during auto-lunch breaks, for all hours worked, or for those hours worked over 40 hours per week.

30. Plaintiff was not properly paid for all owed wages as explained s*upra*. And such actions constitute indefensible violations of the New Jersey Wage Payment Law (N.J. Sta. §§ 34:11-4, et. seq.).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting overtime and wage violations;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's wrongful actions, including but not limited to all owed wages, overtime, and other applicable compensation;

C. Plaintiff is to be awarded actual damages to which she legally entitled beyond those already specified herein;

D. Plaintiff is to be awarded liquidated damages as permitted by applicable law;

E. Plaintiff is to be accorded other equitable relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

G.	Plaintiff is permitted to have a trial by jury.

                Respectfully submitted,

                **KARPF, KARPF & CERUTTI, P.C.**


                */s/ Timothy S. Seiler*
                Timothy S. Seiler, Esq.
                3331 Street Road
                Building 2, Suite 128
                Bensalem, PA 19020
                (215) 639-0801

Dated: August 29, 2019